**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0380n.06

No. 10-5193

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Jun 06, 2011*

LEONARD GREEN, Clerk

MICHAEL TODD HIGHFILL,　　　　　 )
　　　　　　　　　　　　　　　　　 )
　　　Plaintiff-Appellant,　　　　 )
　　　　　　　　　　　　　　　　　 )
v.　　　　　　　　　　　　　　　　 )　ON APPEAL FROM THE UNITED
　　　　　　　　　　　　　　　　　 )　STATES DISTRICT COURT FOR THE
THE CITY OF MEMPHIS,　　　　　　　 )　WESTERN DISTRICT OF TENNESSEE
　　　　　　　　　　　　　　　　　 )
　　　Defendant-Appellee.　　　　　 )

Before: DAUGHTREY, MOORE, and CLAY, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. Plaintiff Michael Todd Highfill appeals the district court's grant of summary judgment to the City of Memphis in this civil-rights action alleging that his termination from his position as a Memphis firefighter was racially motivated, in violation of 42 U.S.C. §§ 1981 and 1983. The City maintains that Highfill was terminated due to his failure to complete his Firefighter II certification within 36 months, a condition of his employment contract. Highfill, who is Caucasian, contends that African-American firefighters who also failed their certification exams were provided with tutors and given additional time to complete their certifications.

Initially, the City challenged the timeliness of Highfill's reverse-discrimination claims, and the district court held that the section 1983 claims were barred by the statute of

limitations. However, the court found that the claims based on section 1981 jurisdiction were timely, and the defendant concedes this point on appeal. We therefore pretermit further review of this question.

The district court also found that Highfill had failed to establish a *prima facie* case of discrimination because he did not prove, first, that he was qualified for continued employment at the time of his termination and, second, that similarly-situated African-American firefighters were treated more favorably than he. The district court made additional rulings below but review of those questions – such as the existence of "background circumstances" to support this reverse-discrimination claim and the plaintiff's allegation of pretext – becomes unnecessary in the absence of a *prima facie* case. We conclude that the record supports the district court's grant of summary judgment and, therefore, affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Highfill was hired as a firefighter and paramedic by the City of Memphis in April 2001. Under the terms of Highfill's employment agreement, he was required to complete his Firefighter I certification within 12 months of the date of his hire and his Firefighter II certification within 36 months of the date of his hire. He successfully completed his Firefighter I certification exam in July 2001. Although he passed the practical portion of his Firefighter II certification exam in May 2003, he failed to pass the written portion despite the fact that he took the test twice. His passing score for the practical portion of the

Firefighter II certification exam expired one year later, in May 2004. In August 2004, Highfill took that portion of the Firefighter II certification exam again, but this time he did not pass it, nor did he complete the other portion of the Firefighter II exam.

Highfill was not dismissed immediately but, following a hearing on October 11, 2004, he was terminated from employment with the City on October 22, 2004, just over three-and-a-half years from the date of his hire. Highfill filed this action in July 2007, claiming racial discrimination motivated his dismissal.

## DISCUSSION

We review the district court's grant of summary judgment *de novo*. *See Wimbush v. Wyeth*, 619 F.3d 632, 636 (6th Cir. 2010). The court's order must be upheld if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We review the evidence in the light most favorable to the non-moving party, but in order to defeat a motion for summary judgment, that party is nevertheless required to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), (quoting Fed. R. Civ. P. 56 (e)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Section 1981 proscribes discrimination on the basis of race in the making or enforcement of contracts and provides, in pertinent part:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. §§ 1981(a) and (b). Section 1981 liability attaches to a municipal defendant only if the allegedly discriminatory actions are based on official municipal policy or custom. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735-36 (1989) ("Thus to prevail on his claim for damages against the [defendant], petitioner must show that the violation of his 'right to make contracts' protected by § 1981 was caused by a custom or policy").

In this case, the district court granted the City's motion for summary judgment on Highfill's discrimination claims because it found that Highfill failed to establish a *prima facie* case of discrimination. In order to make out a *prima facie* case of reverse discrimination,

a litigant must show that: (1) he is a member of a protected class; (2) he was qualified for the job; (3) he experienced an adverse employment action; and (4) he was replaced by a person outside the protected class or he was treated differently than a similarly situated non-protected employee. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In a reverse-discrimination case, circuit precedent adds as an requirement that the plaintiff must demonstrate "background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Leadbetter v. Gilley*, 385 F.3d 683, 690 (6th Cir. 2004) (internal quotation marks omitted). Once a plaintiff successfully meets all the requirements for a *prima facie* case, the burden of production then shifts to the defendant to offer a legitimate, non-discriminatory reason for terminating the plaintiff. *See Id.* (citing *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981)). If the defendant meets this burden, the burden of production once again shifts to the plaintiff to demonstrate that the proffered reason is false or pretextual. *Id.*

The district court found that Highfill failed to establish three of the elements of his *prima facie* case: (1) that he was qualified for his position, (2) that similarly-situated firefighters were treated more favorably than he was treated, and (3) that there existed background circumstances sufficient to support the suspicion that the City of Memphis is that unusual employer that discriminates against the majority. On appeal and especially at oral argument, Highfill's counsel argued forcefully against the "background circumstances" requirement, contending – as some of our opinions have suggested – that it "imposes a more onerous standard for plaintiffs who are white or male than for their

non-white or female counterparts." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 801 n. 7 (6th Cir.1994); *see also Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 257 (6th Cir. 2002) ("We share the concern that . . . the potential application of a heightened pleading standard could be the difference between granting and denying summary judgment."). In this case, however, the presence or absence of background circumstances need not be determined, because it is clear that the evidence fully supports the district court's rulings with regard to the plaintiff's qualification for the position and the City's treatment of similarly-situated minority fire-department employees ("comparators").

In determining whether a plaintiff has presented sufficient evidence of qualification to support a *prima facie* case, only the plaintiff's objective qualifications are relevant. *See Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 575-76 (6th Cir. 2003) (*en banc*) ("The prima facie burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field."). The record does contain several instances of deposition testimony that suggest that Highfill was a proficient employee. The most objective statement of the required qualifications for Highfill's position, however, was Highfill's employment contract. *See Alexander v. CareSource*, 576 F.3d 551, 563-64 (6th Cir. 2009) ("[Defendant]'s job description amounts to evidence of the minimum job qualifications"). That contract clearly states that successfully completing the Firefighter II certification within 36 months of the date of his hire was a requirement of Highfill's position. Hence, by failing to attain this certification,

Highfill failed to "demonstrate[] possession of the required general skills." *Wexler,* 317 F.3d at 576.

The brief Highfill filed on appeal appears to concede this point, but he contends, even so, that African-American employees were given additional time and tutoring support in order to pass the required exam. But Highfill has presented no evidence that with the additional time or support allegedly provided to the African-American firefighters, he would have been able to complete the certification successfully. In fact, the record seems to suggest the opposite, given the fact that he failed the practical portion of the Firefighter II certification exam a year *after* initially passing it.

The district court also found that Highfill did not satisfy another requirement of his *prima facie* case of racial discrimination: proof that similarly-situated African-American employees were treated more favorably than he. In order to be considered "similarly situated" for purposes of comparison, the employment situation of the comparator must be similar to that of the plaintiff in all relevant aspects. *See Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352-53 (6th Cir. 1998).

Highfill provides a lengthy list of potential comparators. However, with respect to the crux of his claim, *i.e.*, that African-American employees were given additional time and support to complete the Firefighter certification requirement, there were only three relevant comparators: Torian Thomas, Cassandra Brown, and Shawn Jackson. Although Highfill argues that African-American employees had disciplinary infractions that are arguably

more serious than failure to pass the certification exams, his discrimination claim rests on the assertion that other African-American employees were treated differently than he was *for purposes of the certification exams* and, thus, unrelated information about other types of infractions by fellow employees is not relevant for purposes of comparison. *See Leadbetter,* 385 F.3d at 691 ("The similarities between the plaintiff and the [comparator] must exist in all relevant aspects of their respective employment circumstances. Differences in job title, responsibilities, experience, and work record can be used to determine whether two employees are similarly situated.") (internal citations and quotations omitted).

The first of the three relevant comparators was Torian Thomas, an African-American firefighter who was hired subsequent to Highfill's termination. Thomas failed to pass his Firefighter I certification exam within the one-year limit, although this result was due specifically to his inability to pass the Hazardous Materials Awareness portion of the Firefighter I exam, an element of the exam that was not required at the time of Highfill took the Firefighter I exam. The record indicates that Thomas was offered tutoring to aid in mastering the hazardous materials portion of the exam but that such tutoring never occurred. Thomas subsequently passed the exam and was retained as an employee. After Thomas failed to attain his Firefighter II certification, however, he was terminated one month after his three-year probation period lapsed.

The second of the three, Cassandra Brown, was an African-American firefighter who was hired in July 2004. Two months later, in September 2004, she was deployed with the military before completing her Firefighter I certification. When she returned from military service in September 2006, she was temporarily assigned to work at the Firefighter Museum until a new recruit class began in March 2007. She subsequently received her Firefighter I certification in September 2007. She then had until March 2010 to complete her Firefighter II certification, but neither the record nor the briefs on appeal indicate whether she was successful.

The third and final comparator was Shawn Jackson, an African-American firefighter who was given a 90-day extension in which to get his Firefighter I certification. The record shows, however, that after he received his Firefighter I certification, he then received his Firefighter II certification with three years of the date of his hire, as stipulated in his employment contract.

Obviously, none of the comparators discussed above was similarly situated to Highfill. Although each of them was given additional time to pass the Firefighter I exam, they were not given extra time or support in passing the Firefighter II certification exam. Moreover, there is nothing in the record to suggest that Highfill needed extra time to pass his Firefighter I certification or that he would have been denied extra time to gain his Firefighter I certification if he had requested it. The only comparator who, like Highfill, failed to attain his Firefighter II certification within three years of hire, Torian Thomas, was

likewise terminated for that reason. Further, Thomas was terminated approximately one month after his three-year period expired, whereas Highfill was not terminated until almost six months after his three-year probation period had expired, suggesting that Highfill was treated more leniently than Thomas, not more harshly.

Moreover, Cassandra Brown's failure to attain her Firefighter I certification within one year of her initial date of hire was due to intervening military service. Discounting this time period, the record shows that she attained her Firefighter I certification within one year of restarting her recruit training. As a result, although she technically was afforded more time to attain her Firefighter I certification, her intervening military service makes her an inappropriate comparator. *See Arendale v. City of Memphis,* 519 F.3d 587, 604 (6th Cir. 2008) ("Superficial similarities between a disciplined employee and his colleagues are not sufficient to show a *prima facie* case of discrimination.").

In summary, none of the department employees who were alleged to be similarly situated to Highfill for purposes of the firefighter-certification requirement were treated more favorably than white firefighters. In fact, the record shows that Highfill may have received special consideration when he was kept on for six months beyond the expiration of his three-year probation period.

Furthermore, even if Highfill could demonstrate that a similarly-situated employee had been treated more favorably than he, the record is devoid of proof that any constitutional deprivation that he suffered was a result of a "a custom or policy within the

meaning of *Monell* [*v. New York City Department of Social Services*, 436 U.S. 658 (1978),] and subsequent cases.*" Jett,* 491 at 735-736. In order to be actionable, an alleged deprivation of rights must have resulted either from "policies which affirmatively command[ed] that it occur" or from "acquiescence in a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." *Id.* at 737 (citations omitted). In other words, the municipality must be the "moving force" behind the deprivation in order to be liable for violations under § 1981. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

In the two instances in which African-American firefighters were given short extensions in which to attain their Firefighter I certification, the extensions were not granted pursuant to a policy that the City of Memphis created, nor were they examples of a practice so pervasive as to constitute a "custom." Nevertheless, as further evidence of a policy or custom of reverse discrimination, Highfill points to a few deposed witnesses who personally believed that African-Americans were treated more favorably than their Caucasian counterparts, but their testimony was vague and non-specific and clearly lacked sufficient weight to serve as evidence of pervasive discrimination. *See Arendale,* 519 F.3d at 600 ("In order to establish that the City's 'failure to act can be said to amount to an official policy of inaction,' the evidence must demonstrate more than just 'a collection of sloppy, or even reckless, oversights . . . .' Rather, the record must show that the City 'consciously never acted when confronted with its employees' egregious and obviously unconstitutional conduct.'") (internal citations omitted). Highfill has simply not presented evidence sufficient

to suggest the existence of discrimination against white firefighters, much less establish that the City of Memphis was the moving force behind a policy of discrimination or that such discrimination went unaddressed by the City despite its pervasiveness.

## CONCLUSION

Because the record fully supports the district court's decision that the plaintiff did not establish a *prima facie* case of discrimination, we AFFIRM the district court's judgment granting summary judgment to the defendant.