NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0101n.06
Filed: February 13, 2008

Nos. 06-4456/4457

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ROBERT MEYER and JANET MEYER, | ) | |
| | ) | |
| Plaintiffs-Appellants, Cross-Appellees, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | NORTHERN DISTRICT OF OHIO |
| AMERISOURCEBERGEN | ) | |
| DRUG CORPORATION, | ) | |
| | ) | |
| Defendant-Appellee, Cross-Appellant. | | |

Before: SUHRHEINRICH and ROGERS, Circuit Judges; BELL, Chief District Judge.[*]

**ROGERS,** Circuit Judge. This case involves the interpretation of a private employment contract. Plaintiffs Robert and Janet Meyer appeal the district court's grant of summary judgment in favor of Robert's former employer, AmerisourceBergen Corporation, arguing that: (1) the district court erred in concluding that AmerisourceBergen's promise to pay Meyer incentive compensation was illusory and unenforceable; and (2) the district court erred in concluding that AmerisourceBergen did not breach the provision of the agreement requiring Meyer's consent to a change in his employment duties or, alternatively, that if there was a breach, Meyer waived his right to assert damages. The Meyers additionally appeal the district court's denial of prejudgment interest

---

[*]The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

on $163,172.85 of severance and insurance pay, which the district court awarded in its *sua sponte* entry of summary judgment in the Meyers' favor on their claim of entitlement to severance and insurance payments under the employment agreement. Defendant AmerisourceBergen cross-appeals, arguing that the district court erred in entering summary judgment for the Meyers on their claim of entitlement to severance and insurance pay.

The district court correctly concluded that Meyer was not entitled to incentive compensation under the employment agreement; that AmerisourceBergen did not breach the agreement provision requiring Meyer's consent to a change in his employment duties; and that Meyer was entitled to severance and health care premiums under the agreement. We therefore affirm the district court's grant of summary judgment to AmerisourceBergen and Meyer, respectively, on these issues. Because the district court erred in denying the Meyers prejudgment interest on their severance and insurance premium award, however, we reverse its denial and remand with instructions to amend the judgment to include an award of prejudgment interest.

## Background

Robert Meyer was employed by AmerisourceBergen and its predecessors from approximately 1985 until his retirement in 2003. In early 2000, Meyer began discussions with the president of AmeriSource about reducing his responsibility, with an eye toward retirement. Meyer and his attorney negotiated and executed an employment agreement with AmeriSource, which became effective April 1, 2000. By its terms, the Agreement is governed by Ohio law.

The Agreement defined Meyer's employment duties as "the administration and planning of AmeriSource University programs, special projects related to Home Health Care and Health Services Plus as well as AmeriSource Medical Supply," and provided that Meyer would not generally be expected to work more than twenty-four hours per week. Section 1(c) of the Agreement provided that "[t]he duties of [Meyer] may be changed by the written mutual consent of the Company and Meyer."

In addition, the Agreement provided that Meyer would receive a salary of $73,800 for each year of the employment period, which was to expire after three years on March 31, 2003. Section 3(b) of the Agreement allowed for the possibility of incentive compensation:

> As additional compensation, during the Employment Period, [Meyer] may be entitled to receive incentive compensation ("Incentive Compensation") as may be authorized, declared and paid by the Board of Directors of the Company based upon personal and Company performance at a rate applicable to comparable Company executives.

Upon termination of Meyer's employment for any reason other than "for cause" or Meyer's own voluntary termination, Meyer was entitled under Section 11(e) of the Agreement to a severance payment of $147,600:

> In the event of any termination of Meyer's employment hereunder pursuant to Sections [11(a)(i)–(iii)] or 11(a)(v), the Company shall pay Meyer a lump sum severance amount equal to two (2) times his annual salary. This severance benefit shall be due and payable to Meyer for termination of employment herein, except the Company is not obligated to pay the lump sum severance if Meyer's termination of employment is due to "cause" as set forth in Section 11(a)(iv) or voluntary termination of employment by Meyer pursuant to Section 11(a)(vi).

The severance clause provided that "[s]aid severance payment shall be made to Meyer by the Company within thirty (30) days after termination." AmeriSource also agreed in Section 11(f)(i) to pay the premiums and provide medical, health, and drug plan insurance coverage for Meyer and his wife until their 62nd birthdays, at which time they would be eligible for Medicare. Section 11(h) of the Agreement contemplated that, at some point, Meyer would sign a release of liability in favor of AmeriSource:

> In the event that the Company has performed all of the obligations, by it to be performed under this Agreement for the benefit of Meyer, then Meyer will execute in favor of the Company a release, in standard form and satisfactory to the Company, of any claims by Meyer arising out of this Agreement or Meyer's termination, except such release shall exclude any continuing obligations of the Company to pay the future medical and health premiums under Section 11(f) and the insurance/indemnity obligation under Section 12 per the terms of this Agreement.

During Meyer's first year of employment under the Agreement, he did not initially receive a bonus or stock options. Meyer claims that he protested, at which point he was paid an additional $10,000 without explanation. Meyer also claims that after his termination, he learned from a third-party administrator that he had been granted stock options for 8,000 shares of stock.

In March 2001, AmeriSource sold its Home Health Care division. Because Meyer had managed this division, the sale resulted in a reduction of Meyer's workload and his hours were reduced to eighteen-to-twenty per week.

In September 2001, AmeriSource merged with Bergen Corporation. Bergen had a training program similar to that of AmeriSource University, and Bergen's health care programs essentially

replaced the divisions of AmeriSource with which Meyer had dealt. Meyer's duties were taken over by a Bergen employee, and AmeriSource assigned Meyer no new responsibilities. Thus, from September 2001 until his retirement under Section 11(a)(i) of the Agreement in March 2003, Meyer performed no duties for AmerisourceBergen. Nevertheless, AmerisourceBergen continued to pay Meyer his annual salary of $73,800 for the remainder of the contractual employment period.

On March 3, 2003, near the end of the three-year employment term, AmerisourceBergen sent Meyer a "Severance Letter and General Release" document. The document required Meyer to accept several "Severance Terms" as a prerequisite to his receipt of the severance and insurance payments described in the original agreement. Meyer refused to sign the Release, arguing that its terms varied materially from key terms of the original employment agreement and that AmerisourceBergen had not yet performed some of its obligations under the original agreement. Meyer claims that he offered to sign a more limited release, which allegation AmerisourceBergen admitted in its Answer.

Because Meyer and AmerisourceBergen never agreed on a release, AmerisourceBergen never paid Meyer his $147,600 severance or the insurance premiums for Meyer and his wife. In the meantime, Meyer paid his own health insurance premiums. The parties stipulated that Meyer paid $15,572.85 in premiums that AmerisourceBergen would otherwise have paid under the Agreement.

In May 2004, Robert and Janet Meyer sued AmerisourceBergen for breach of contract.[1] Meyer claimed that, among other sections of the Agreement, AmerisourceBergen breached: (1)

---

[1]The Meyers also made other claims that are not relevant to this appeal.

Section 1(c) by "substantially changing [Meyer's] duties without his written or mutual consent"; (2) Sections 3(b) and (c) by "failing and refusing to pay [Meyer] incentive compensation and award [Meyer] stock options at a rate and in an amount applicable to comparable AmerisourceBergen executives"; and (3) Sections 11(e) and (f) by failing to pay Meyer's lump-sum severance and insurance premiums. Additionally, Meyer sought prejudgment interest on any award of damages.

AmerisourceBergen moved for summary judgment in November 2004, arguing that Meyer had presented no genuine issue of material fact and that AmerisourceBergen was entitled to judgment as a matter of law. The Meyers did not file a response, nor did they file their own motion for summary judgment.

In July 2006, the district court granted AmerisourceBergen's motion for summary judgment on all of the Meyers' claims except those for severance and reimbursement of insurance premiums, and *sua sponte* awarded the Meyers $147,600 in severance and $15,572.85 for insurance premiums. The district court concluded that Meyer was not entitled to incentive compensation under the Agreement, reasoning that the incentive compensation clause constituted an illusory and unenforceable promise because it vested AmerisourceBergen with unfettered discretion to award incentive compensation.

The court also concluded that AmerisourceBergen had not breached the Agreement by reducing Meyer's workload. The court reasoned that the Agreement protected Meyer from an increase in duties without a commensurate increase in salary, "but did not guarantee his duties would

remain the same," indicating by implication that the Agreement did not require Meyer's consent for a decrease in duties. The court also noted Meyer's acquiescence in AmeriSource's sale of the Home Health Care division and merger with Bergen, concluding that Meyer had waived any right to claim damages from the reduction in his duties by "sitting silent for two years and collecting his salary." Later, in its denial of Meyer's motion to alter or amend the judgment, the district court reasoned that "[t]he Agreement does not guarantee Meyer any specific level of duties."

Finally, after noting that "a court may enter summary judgment *sua sponte* in favor of a nonmoving party when the moving party has had adequate opportunity to present evidence on the issue on which summary judgment is granted," the district court concluded that Meyer was entitled to severance and "medical, health, and drug plan coverage insurance" and *sua sponte* awarded the Meyers a total of $163,172.85. The district court did not award prejudgment interest on this amount.

In August 2006, the Meyers filed a motion to alter or amend the judgment, asking the court to permit a jury trial on their incentive compensation claim and to add $33,923.76 in prejudgment interest to the judgment. The district court denied the requested relief. With respect to the Meyers' request for prejudgment interest, the court explained that, because the Agreement "clearly contemplates that Meyer would sign a release in exchange for Defendant's payment of severance and insurance benefits," AmerisourceBergen did not breach the Agreement by withholding payment until a satisfactory release could be agreed upon. Noting that a plaintiff is not entitled to prejudgment interest when he "induced delay by refusing to sign a release" and that Meyer had not responded

when AmerisourceBergen informed him that it was ready and able to pay his severance and medical premiums, the district court denied the Meyers prejudgment interest.

On appeal, the Meyers argue that AmerisourceBergen's promise to pay Meyer incentive compensation is not illusory, and that the district court erred in so holding. The Meyers also argue that AmerisourceBergen breached the Agreement by changing his duties without his consent, and that Meyer did not waive his right to assert damages arising from the reduction of his duties. The Meyers also assert that they are entitled to prejudgment interest on the severance and insurance judgment awarded them.

AmerisourceBergen cross-appeals, arguing that the district court erred in entering judgment for the Meyers on their severance and medical insurance claims. AmerisourceBergen argues that: (1) the Meyers' failure to respond to AmerisourceBergen's motion for summary judgment mandates reversal on the severance/insurance issue; (2) AmerisourceBergen was prejudiced by the district court's failure to provide it with ten days' notice before *sua sponte* entering judgment in the Meyers' favor, thereby mandating reversal; and (3) alternatively, the district court erred in entering judgment for the Meyers on the severance and insurance claim because a genuine issue of material fact exists regarding whether Meyer was required to sign the Release as a prerequisite to his entitlement to severance and insurance premiums.

**Analysis**

**I. Meyer is not entitled to incentive compensation under the Agreement, and AmerisourceBergen did not breach the Agreement by declining to provide it.**

The district court correctly concluded that Meyer was not entitled to incentive compensation under the employment agreement, and AmerisourceBergen therefore did not breach the Agreement by declining to award Meyer incentive compensation during his last two years of employment.

Section 3(b) of the Agreement provides:

> As additional compensation, during the Employment Period, [Meyer] *may* be entitled to receive incentive compensation ("Incentive Compensation") as *may* be *authorized, declared and paid* by the Board of Directors of the Company based upon personal and Company performance at a rate applicable to comparable Company executives.

(emphasis added). As the district court explained, this clause provides AmerisourceBergen with unfettered discretion regarding whether or not to award Meyer incentive compensation.[2] The Agreement leaves the award of incentive compensation optional with AmerisourceBergen, and AmerisourceBergen "retains an unlimited right to determine the nature or extent of [its] performance." *Century 21 v. McIntyre*, 427 N.E.2d 534, 536-37 (Ohio App. 1980). Under Ohio law, which governs the Agreement, this discretion renders the incentive compensation clause of the

---

[2]As AmerisourceBergen summarized in its brief, the plain language of the clause also appears to give AmerisourceBergen discretion to determine: (1) whether Meyer would receive incentive compensation; (2) the amount of incentive compensation Meyer would receive if necessary; (3) the performance of the company and of Meyer; and (4) who, if anyone, constituted a comparable company executive to Meyer.

Agreement illusory and unenforceable. *See id.*; *Imbrogno v. MIMRx. COM, Inc.*, No. 03AP-345, 2003 Ohio App. LEXIS 5459 (Ohio App. Nov. 18, 2003). As the Ohio courts have explained, "[a]n apparent promise which according to its terms makes performance optional with the promisor . . . is in fact no promise, although it is often called an illusory promise." *Imbrogno*, 2003 Ohio App. LEXIS 5459, at **6 (citing *Andreoli v. Brown*, 299 N.E.2d 905, 906 (Ohio App. 1972)). "If a promise is illusory, of course, then the contract is not enforceable." *Id*. at **6. Consequently, although the Agreement left open the possibility of incentive compensation, it did not guarantee such compensation, and Meyer is not entitled to bonuses or stock options.

The Meyers argue that the incentive compensation section of the Agreement is not illusory because the last clause, "based upon personal and Company performance at a rate applicable to comparable Company executives," provides standards for—and a limit on—AmerisourceBergen's discretion regarding incentive compensation. But these standards serve only to guide AmerisourceBergen *if* it opts to authorize, declare, and pay incentive compensation to Meyer at all. The Agreement clearly states that Meyer "*may* be entitled" to incentive compensation as "*may* be authorized, declared and paid by the Board." The word "may" is permissive and is not synonymous with "shall." The fact that the Agreement provides AmerisourceBergen with standards for determining how much incentive compensation to award, if it chooses to, does not change the optional and discretionary nature of incentive compensation under the terms of the Agreement. Consequently, the Agreement's incentive compensation clause is illusory and unenforceable, and

AmerisourceBergen did not breach the Agreement by declining to award Meyer incentive

compensation during his last two years of employment.[3]

## II. AmerisourceBergen did not breach the Agreement by reducing Meyer's workload.

AmerisourceBergen also did not breach the Agreement by reducing Meyer's workload.

Section 1(a) defines Meyer's employment duties as "the administration and planning of AmeriSource

University programs, special projects related to Home Health Care and Health Services Plus as well

as AmeriSource Medical Supply." Regarding Meyer's workload, the Agreement provides: "Normal

hours of work will be determined by the requirements of the said specified duties. Hours of work

on average are not expected to exceed twenty-four (24) hours per week." Section 1(c) requires

---

[3]The Meyers make a number of arguments regarding this clause of the Agreement that lack merit. For example, they argue that courts disfavor interpretations that render contracts illusory and unenforceable, and instead prefer interpretations that give the contract vitality, citing *Thomas v. Am. Electric Power Co.*, 2005 Ohio App. LEXIS 1859, at *P32 (Ohio App. Apr. 28, 2005). While true, this maxim of interpretation only applies if the contract language is ambiguous and fairly permits an interpretation that does not render the contract illusory. *See McCoy v. Meridian Auto. Sys., Inc.*, 390 F.3d 417, 422 (6th Cir. 2004) (applying "[b]asic principles of contract interpretation" to Michigan contract). The agreement at issue in the instant case is not ambiguous and does not fairly permit the Meyers' interpretation.

The Meyers also argue that the district court erred in relying on parol evidence to determine that the incentive compensation clause is illusory. However, the district court did not improperly consult "parol evidence." Meyer's deposition statements were not used to contradict or alter the terms of a written agreement, but rather were simply used to bolster the clear conclusion from the plain language of the contract: that the award of incentive compensation was discretionary with AmerisourceBergen. Even if the district court's mention of Meyer's deposition statements were somehow impermissible, it would not matter because the district court's grant of summary judgment could be affirmed on the basis of the Agreement language alone.

written mutual consent of Meyer and AmerisourceBergen for a change in Meyer's employment duties.

Although various business decisions resulted in a total elimination of Meyer's workload, at no time were his duties changed without his consent. Meyer was never required to become a teacher, for example. The reduction in Meyer's work does not constitute a "change" in Meyer's Section 1(a) employment duties under a natural reading of Section 1(c) of the Agreement. As the district court reasonably explained, "[t]he Agreement does not guarantee Meyer any specific *level* of duties" (emphasis added). The Agreement's only provision with respect to workload is that Meyer will not usually be expected to work more than twenty-four hours per week. Because Meyer's duties were not changed, Meyer's argument that AmerisourceBergen breached the Agreement by changing his duties without his consent is unavailing. We do not need to reach the district court's alternative reasoning that Meyer waived his rights in this regard by acquiescing in the corporate actions that caused his level of work to be decreased.

**III. AmerisourceBergen breached the Agreement by failing to pay Meyer's severance and insurance premiums.**

On the other hand, AmerisourceBergen did breach the Agreement by failing to pay Meyer's severance and insurance premiums.

The termination of Meyer's employment on March 31, 2003, triggered AmerisourceBergen's obligations both to pay Meyer's lump-sum severance and to pay the premiums and provide medical, health, and drug plan coverage insurance. Section 11(e) of the Agreement provides:

> *In the event of any termination of Meyer's employment hereunder pursuant to Sections [11(a)(i)-(iii)]* or 11(a)(v), the Company shall pay Meyer a lump sum severance amount equal to two (2) times his annual salary. This severance benefit *shall be due and payable* to Meyer for termination of employment herein, *except* the Company is not obligated to pay the lump sum severance if Meyer's termination of employment is due to "cause" as set forth in Section 11(a)(iv) or voluntary termination of employment by Meyer pursuant to Section 11(a)(vi). *Said severance payment shall be made to Meyer by the Company within thirty (30) days after termination.*

(emphasis added). Regarding insurance premiums and coverage, Section 11(f) provides:

> The Company shall provide and directly pay to the group insurance provider the premium cost of the Company's medical, health and drug plan coverage insurance for Meyer and his spouse as follows:
>
> (i) Upon termination of Meyer's employment under this Agreement pursuant to Section 11(a)(i) or 11(a)(v), the Company shall pay the premiums and provide coverage . . . .

Under the plain language of Sections 11(e) and (f), the termination of Meyer's employment for specified reasons is the only precondition to Meyer's receipt of severance and insurance coverage. The parties do not dispute that Meyer's employment was terminated pursuant to Section 11(a)(i). AmerisourceBergen was therefore obligated to begin payment of his insurance premiums upon his termination and to pay his severance within thirty days of March 31, 2003. Consequently,

- 13 -

AmerisourceBergen's failure to pay the Meyers' severance and medical benefits constituted a breach of contract.

Contrary to AmerisourceBergen's arguments, the Agreement does not require Meyer to sign a release of liability as a prerequisite to his receipt of severance and insurance benefits. First, as explained above, the only explicit precondition to Meyer's receipt of severance and insurance premiums under those clauses is the termination of his employment for specified reasons.[4] Second, contrary to the assertions of AmerisourceBergen, the release clause of the Agreement does not condition Meyer's receipt of severance and insurance premiums on his execution of a release. Section 11(h) provides:

> *In the event that* the Company has performed all of the obligations, by it to be performed under this Agreement for the benefit of Meyer, *then* Meyer will execute in favor of the Company a release, in standard form and satisfactory to the Company, of any claims by Meyer arising out of this Agreement or Meyer's termination, except such release shall exclude any continuing obligations of the Company to pay the future medical and health premiums under Section 11(f) and the insurance/indemnity obligation under Section 12 per the terms of this Agreement.

(emphasis added). This clause clearly indicates that Meyer's obligation to execute a release of liability does not arise until after AmerisourceBergen has performed all of its contractual obligations, with the exception of its "continuing obligations . . . to pay the future medical and health premiums

---

[4]It is especially clear from the severance clause that Meyer's execution of a release is not a precondition. The clause specifically lists exceptions to AmerisourceBergen's obligation to pay severance: if Meyer quits or is terminated for cause. Failure to execute a release is not among the clause's exceptions.

under Section 11(f) and the insurance/indemnity obligation under Section 12 . . . ." Before Meyer

is expected to sign a release, then, AmerisourceBergen is required to fully perform *all* of its

contractual obligations *except* the full two-to-three years of medical coverage and indefinite

indemnity—including its obligations to pay severance and begin payment on medical insurance

premiums. Although AmerisourceBergen offers alternative interpretations of Section 11(h), those

interpretations are not persuasive.[5] Consequently, AmerisourceBergen's obligations to pay Meyer's

severance and insurance premiums were triggered by Meyer's termination and were not affected by

his failure to execute a release of liability, and the company's failure to fulfill these obligations

constituted a breach of contract.

**IV. The district court's failure to provide ten days' notice to AmerisourceBergen before *sua sponte* entering summary judgment in favor of the Meyers on severance and insurance premiums does not require reversal.**

Moreover, the district court's failure to provide ten days' notice to AmerisourceBergen

before *sua sponte* entering summary judgment in favor of the Meyers on severance and insurance

premiums does not require reversal because AmerisourceBergen was not prejudiced.

---

[5]AmerisourceBergen appears to hint that it was not required to pay Meyer's severance because he was terminated "for cause," on the theory that his failure to sign the Release constitutes a "material breach" of the Agreement. *See* Appellee's Br. 35. In no other section of its briefs does AmerisourceBergen indicate that Meyer's termination was "for cause," nor could it. In order for Meyer's termination to be considered a termination under Section 11(a)(iv), AmerisourceBergen would have had to deliver Meyer a written notice of the Company's election to terminate his employment for cause. *See* JA 22. It does not appear that AmerisourceBergen ever gave Meyer such a document.

- 15 -

It is permissible for district courts to enter summary judgment *sua sponte* in favor of a nonmoving party as long as the court "afford[s] the party against whom *sua sponte* summary judgment is to be entered ten-days notice and an adequate opportunity to respond." *Yashon v. Gregory*, 737 F.2d 547, 552 (6th Cir. 1984); *see also Harrington v. Vandalia–Butler Bd. of Ed.*, 649 F.2d 434, 436 (6th Cir. 1981). "The party against whom *sua sponte* summary judgment has improperly been entered must, however, demonstrate prejudice in order to obtain relief on appeal." *Yashon*, 737 F.2d at 552; *see also Harrington*, 649 F.2d at 436 ("A District Court's failure to comply with the ten-day requirement of Rule 56(c) is subject to the harmless error rule.").

In the instant case, AmerisourceBergen was not harmed or prejudiced by the district court's failure to provide notice before it *sua sponte* entered judgment in favor of the Meyers on their severance and insurance claims. No genuine issue of material fact existed with respect to these claims, and the disposition of the case hinged on the interpretation of contract language. AmerisourceBergen had already fully briefed these issues in its motion for summary judgment and has pointed to no new argument that it was prevented from making by virtue of the district court's *sua sponte* entry of judgment. *See Harrington*, 649 F.2d at 436 ("[W]hen the legal issue has already been fully briefed and no factual dispute exists, that party has not been prejudiced by the court's noncompliance with Rule 56(c)."). Because the district court did not cause prejudice to AmerisourceBergen in failing to provide notice that it was considering a *sua sponte* entry of judgment in favor of the Meyers, AmerisourceBergen cannot compel reversal on that basis.

**V. The district court erred in denying the Meyers prejudgment interest.**

Finally, however, the district court erred in denying the Meyers prejudgment interest on their award for severance and insurance expenses. The award of prejudgment interest in the instant action is governed by Ohio law. *See Hale v. Life Ins. Co. of N. Am.*, 795 F.2d 22, 24 (6th Cir. 1986) ("When a federal court's jurisdiction rests upon diversity, the award of prejudgment interest is governed by state law."). Under Ohio law, "when money becomes due and payable upon any . . . instrument of writing. . . and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code . . . ." O.R.C. § 1343.03(A). The purpose of prejudgment interest is "to compensate the plaintiff for his inability to use the money between the date the claim was due, and the date it was paid." *Hale*, 795 F.2d at 24; *see also Oaker v. Farmers Ins. Co. of Columbus*, *Inc.*, 717 N.E.2d 778, 779 (Ohio App. 1998).

As explained above, AmerisourceBergen was contractually obligated to pay Meyer's severance within thirty days of his termination, and was obligated upon Meyer's termination to begin payments for and provision of medical coverage.[6] Although trial courts have discretion to determine factual matters concerning prejudgment interest, *see, e.g.*, *Kalain v. Smith*, 495 N.E.2d 572, 574

---

[6]AmerisourceBergen's withholding of Meyer's severance and insurance premiums constituted a breach of contract, and Meyer did not breach the Agreement by not executing a release before AmerisourceBergen fulfilled these obligations. Therefore, AmerisourceBergen's reliance on *Cohara v. Consolidated Rail Corp.*, 772 N.E.2d 656, 660 (Ohio App. 2002), is inapposite.

(Ohio 1986) (trial court has discretion to determine lack of good faith in § 1343.03(C) context);

*Landis v. Grange Mut. Ins. Co.*, 695 N.E.2d 1140, 1142 (Ohio 1998) (trial court has discretion to

determine date of accrual), in the O.R.C. § 1343.03(A) context with liquidated contract damages,

"[i]f a favorable judgment award has been obtained by plaintiff, plaintiff has a right under [O.] R.

C. 1343.03(A) to an interest award as a matter of law, and the trial judge has no discretion not to

grant any interest award." *Lincoln Elec. Co. v. St. Paul Fire and Marine Ins. Co.*, 210 F.3d 672, 693

(6th Cir. 2000); *see also Dayton Sec. Assocs. v. Avutu*, 664 N.E.2d 954, 958-59 (Ohio App. 1995);

*Cafaro Northwest Pshp. v. White*, 707 N.E.2d 4, 6 (Ohio App. 1997). The Meyers are therefore

entitled under Ohio law to prejudgment interest from the time severance and insurance payments

became due.

## Conclusion

For the reasons stated above, we: (1) affirm the district court's grant of summary judgment

to AmerisourceBergen; (2) affirm the district court's *sua sponte* entry of summary judgment for the

Meyers on their severance and insurance premium claims; but (3) reverse the district court's denial

of prejudgment interest and remand with instructions to amend the judgment to include an award of

prejudgment interest.