NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0198n.06

No. 09-4241

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Mar 30, 2011**

LEONARD GREEN, Clerk

DELPHI AUTOMOTIVE SYSTEMS, LLC,  )
) ON APPEAL FROM THE
Plaintiff-Appellant,  ) UNITED STATES DISTRICT
) C O U R T   F O R   T H E
v.  ) NORTHERN DISTRICT OF
) OHIO
UNITED PLASTICS, INC., et al.,  )
) O P I N I O N
Defendants-Appellees.  )

BEFORE:    McKEAGUE and WHITE, Circuit Judges; MAYS, District Judge.[*]

**McKeague, Circuit Judge.**  Delphi Automotive Systems, LLC ("Delphi") contracted with United Plastics, Inc. ("United Plastics") for the sale of scrap metal.  After United Plastics received all material it purchased pursuant to two purchase orders, but failed to pay in full, Delphi filed a complaint alleging a number of state law claims against United Plastics and various defendants who were involved either in the sale of material by Delphi to United Plastics or in transactions occurring after the initial sale involving the Delphi scrap metal.  Specifically, Delphi named as defendants Robert C. Geib ("Geib"), Abraham Hooshiarnejad ("Hooshiarnejad"), Rodney Cronin ("Cronin"), Michael France ("France"), American Recycling Concepts ("American"), and Alright International, Inc. ("Alright").  Delphi also filed a motion for summary judgment, which the district court granted

---

[*]The Honorable Samuel H. Mays, Jr., United States District Judge for the Western District of Tennessee, sitting by designation.

as to Delphi's contract claim against United Plastics. The district court denied Delphi's motion as to its claims against all other defendants, and then entered judgment on their behalf sua sponte. Delphi now appeals. For the reasons that follow, we find that the district court did not abuse its discretion in entering judgment sua sponte in favor of defendants, and we AFFIRM the district court's grant of summary judgment.

## I. BACKGROUND

Delphi, a Delaware limited liability company with its headquarters in Troy, Michigan, filed a complaint in the United States District Court for the Northern District of Ohio, raising various claims arising from an alleged breach of contract by United Plastics, an Ohio corporation with its principal place of business in Franklin County, Ohio. After submitting two more amended complaints, Delphi filed its third amended complaint against United Plastics, Geib, Hooshiarnejad, Cronin, France, American, and Alright, all Ohio residents or Ohio corporations with principal places of business in Ohio.[1] The complaint raised claims of breach of contract, unjust enrichment, action on account, negligent misrepresentation, promissory estoppel, intentional misrepresentation/fraudulent inducement, promissory fraud, conversion, and civil conspiracy. Delphi sought to recover $1,658,516.73, the amount it alleged United Plastics still owed Delphi,

---

[1]Ryan Cronin and Recycling Concepts, LLC were also named as defendants in the third amended complaint. However, Delphi voluntarily dismissed these defendants on December 11, 2008. Delphi also listed a John Doe Company as a defendant in the complaint, which was not listed in Delphi's subsequently-filed motion for summary judgment.

pursuant to the parties' purchase order contracts. United Plastics, Geib, Hooshiarnejad, France, and Alright filed a joint answer to the complaint, and Cronin filed his own answer to the complaint.[2]

On March 2, 2009, Delphi filed a motion for summary judgment against all defendants. The motion and attached exhibits established the following undisputed facts. United Plastics, owned and operated by Hooshiarnejad, bid on and won the right to enter into purchase orders to purchase plastic coated copper wire and tin-plated scrap material ("scrap metal" or "the material") from Delphi. The executed bid sheets were submitted by Geib, who "work[ed] on behalf of United Plastics with respect to the bids, Purchase Orders and the Material received from Delphi." On December 16, 2006, after winning the bid, United Plastics issued a purchase order for the material, which stated that invoices submitted by Delphi would be paid within fifteen days. Although United Plastics picked up two loads of material between January 1 and March 31, 2007, it did not pay for the material it obtained within the time specified on the purchase order, despite the fact that France, who worked "on behalf of United Plastics with respect to the bids and the Material received from Delphi," "instructed where the Material should be stored, and took an active role in attempting to sell the Material," had secured a purchaser for that material who had already paid United Plastics.

Even though it had not received payment from United Plastics pursuant to the first purchase order, Delphi issued another request for bids by United Plastics in the second quarter of 2007. United Plastics issued a second executed bid sheet on March 18, 2007, which was accepted by Delphi and resulted in a second purchase order being submitted by United Plastics for more material.

---

[2]American filed an answer on the same day as Cronin. However, it is docketed and identified as an answer to the second amended complaint, not the third.

This purchase order covered the period from April 1 to June 30, 2007 and again stated that invoices submitted by Delphi would be paid within fifteen days. During the time period covered by the second purchase order, United Plastics "or its agent" picked up approximately 900,000 pounds of material. Although invoices were issued after the pick-up of each load of material, and United Plastics admitted that it had received all material it was entitled to, it failed to pay for all the material it received in both the first and second quarter.

Specifically, United Plastics received $171,142.28 for material it picked up from Delphi during the first quarter of 2007 and then sold to a third party, but United Plastics never remitted payment to Delphi for that material. Regarding material picked up during the second quarter, Delphi asserted that "United Plastics, and its *agents*, Defendants Geib, France, [Hooshiarnejad] and Alright, arranged for other entities to become involved in the sale of the Delphi Material." (emphasis added). France solicited the services of Cronin, who found a buyer for almost half of the material picked up during the second quarter. The buyer then wired funds to a company owned by Cronin's son, which wire-transferred money into Alright's bank account (a company that was owned and operated by Geib). Delphi, however, was never fully compensated.

Although the facts pertaining to the actual transfer of funds remain somewhat unclear, it appears that while United Plastics agreed to pay $2,508,118.15 for all the material it received from Delphi in the first and second quarter of 2007, Alright, the company responsible for wire transfers between United Plastics and Delphi, paid Delphi only $849,601.42. Delphi attempted to collect on the remaining amount due and, in July 2007, it contacted Geib, who assured Delphi that pursuant to representations made by France, United Plastics' customer would be wiring funds to United

Plastics and, in turn, United Plastics would pay Delphi. In August 2007, Geib and Hooshiarnejad met with Delphi representatives to discuss the past due amount and established proposed payment plans. After making one payment in September 2007, United Plastics failed to make any further payments, and Delphi asserted that it was still owed $1,658,516.73. Having not been fully paid for its material, Delphi requested the opportunity to inspect the remaining material. Geib contacted France, who set up a meeting in September 2007 between Delphi representatives and Hooshiarnejad, Geib, France, and Cronin at Cronin's warehouse. Cronin, who operates American, had taken possession of the material and was the last person seen with it.

In its motion for summary judgment, Delphi first argued that it was entitled to summary judgment on its breach of contract and action on account claims because "the unambiguous terms of the purchase orders" required payment by United Plastics in the full amount still due for the material picked up but not yet paid for by United Plastics. In its joint response to the motion for summary judgment filed on behalf of United Plastics, Geib, Hooshiarnejad, France, and Alright, United Plastics admitted some liability on its part (though disputing the liability of any other defendant), but challenged the amount it actually owed to Delphi. The district court concluded that there was "no ambiguity in the language of the contract," that United Plastics owed Delphi $1,658,516.73 (the full amount Delphi was seeking), and entered judgment in favor of Delphi on its breach of contract and action on account claims against United Plastics. *Delphi Auto. Sys., LLC v. United Plastics, Inc., et al.*, Case No. 5:08-cv-00253, slip op at 8 (N.D. Ohio Sept. 9, 2009).

Delphi next argued that defendants were unjustly enriched because they received the benefit of Delphi's material, but never remitted payment for receipt of that material. Similarly, Delphi

argued that all defendants were liable for conversion because they "came into possession of the Delphi Material," which was located at defendants Cronin and American's warehouse, "the Material is gone, and Delphi has not been fully paid." The district court ruled that, to the extent these two claims sought the exact amount of contract damages, they were "an alternate to recovery" to the breach of contact and action on account claims against United Plastics, and therefore they were "superfluous" as to United Plastics. *Delphi Auto. Sys.*, at 9. As to the remaining defendants, the court first found that they "held themselves out as [United Plastics'] agents, with [United Plastics'] knowledge and approval, and that Delphi perceived them and dealt with them" as United Plastics' agents, and thus they could not be personally liable with respect to these claims. *Id.* Moreover, even assuming these defendants were not acting as agents of United Plastics, the court determined that "Delphi would still not be entitled to summary judgment against them on a claim of unjust enrichment because Delphi did not confer a benefit on any of them" sufficient to satisfy the requirements for this claim. *Id.* at 10. Additionally, Delphi did not have any ownership interest in the material once United Plastics took possession, as was required to state a claim for conversion and to recover possession of the material. *Id.* at 10–11.

Delphi also alleged that United Plastics, Hooshiarnejad, Geib, and Alright were liable for promissory estoppel, intentional misrepresentation/fraudulent inducement, promissory fraud, and negligent misrepresentation. Again, the court determined that because Delphi sought the exact amount of contract damages it had already recovered on against United Plastics, these claims were duplicative as to that defendant. *Delphi Auto. Sys.*, at 11. As to the remaining defendants, the court determined that Delphi could not "establish the essential elements of these claims against the other

three defendants because they had no duty to promise payment to Delphi (promissory estoppel and promissory fraud claims) or to make any representations to Delphi with respect to payment on [United Plastics'] contract (intentional misrepresentation/fraudulent inducement and negligent misrepresentation claims)." *Id.* at 11–12.

Finally, Delphi alleged that all defendants conspired to retain or wrongfully move the material without fully compensating Delphi, and therefore all were liable for civil conspiracy. However, because the district court found that there was no underlying tort, it concluded that there could be no civil conspiracy. *Delphi Auto. Sys.*, at 12. Moreover, the court found that "under the intra-corporate conspiracy doctrine, a corporation cannot conspire with its own agents or employees." *Id.* (internal quotation marks omitted). Thus, Delphi failed to establish the elements of a civil conspiracy. *Id.* at 12–13. Delphi then filed a timely notice of appeal.

## II. JURISDICTION

The district court did not expressly state the basis upon which it was exercising jurisdiction, although both parties asserted in their briefs that the district court had jurisdiction pursuant to 28 U.S.C. § 1332. Under § 1332, the district court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a)(1). The parties continue to assert diversity jurisdiction as a basis for subject matter jurisdiction on appeal, as no federal question is presented in Delphi's complaint. However, although the amount in controversy ($1,658,516.73) is sufficient to satisfy this prerequisite for diversity jurisdiction, it was not clear that all the parties were actually diverse.

In its brief on appeal, Delphi states that it "is a Delaware Limited Liability Company, and all other Defendants-Appellees are citizens of and/or incorporated in the State of Ohio." In each of its complaints filed in the district court, Delphi similarly stated that it "is a Delaware limited liability company with its headquarters and principal place of business located in Troy, Michigan." It adds that "Delphi Packard Electric Systems ("Packard") is an unincorporated division of Delphi, which operates in Warren, Ohio," (the location at which the material was stored) and that all defendants, both individual and corporate, are citizens of Ohio.

It appears that the parties and the lower court mistakenly assumed that Delphi's citizenship for the purpose of diversity jurisdiction could be established by its state of organization and principal place of business. However, as this court explained in *Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003 (6th Cir. 2009), this assumption is in error. *Id.* at 1005. Instead, the general rule adopted by this circuit and every other circuit to address the issue "is that all unincorporated entities-of which a limited liability company is one-have the citizenship of each partner or member." *Id.* Thus, in order to determine whether subject matter jurisdiction exists on the basis of diversity, we requested supplemental briefing from the parties, specifically regarding the citizenship of Delphi's members. Delphi filed a letter brief, in which it stated that "[t]he sole member of Delphi Automotive Systems, LLC is Delphi Holdings, LLC, which is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Troy, Michigan." Further, "Delphi Corporation is the sole member of Delphi Holdings, LLC and is a corporation organized and existing under the laws of the State of Delaware and, likewise, has its principal place of business in Troy, Michigan." Delphi again asserts that all defendants are citizens of the state of Ohio, and in

their supplemental letter brief, defendants agree with Delphi's contention regarding their citizenship.

Accordingly, the parties have established complete diversity exists and we proceed to address the

merits of Delphi's claims.

### III.  ANALYSIS

On appeal, Delphi argues that the district court abused its discretion by sua sponte dismissing

its claims against Geib, Hooshiarnejad, France, Cronin, and American, and further that the court

erred in dismissing these claims on the merits as to these defendants.[3]  "When a district court grants

summary judgment sua sponte, its decision is subject to two separate standards of review."  *Shelby*

*Cnty. Health Care Corp. v. S. Council of Indus. Workers Health and Welfare Trust Fund*, 203 F.3d

926, 931 (6th Cir. 2000).  "The district court's procedural decision to enter summary judgment sua

sponte . . . is reviewed for abuse of discretion," while "[t]he substance of the district court's decision

is reviewed de novo under the normal standards for summary judgment."  *Id.*

### A. Sua Sponte Grant of Summary Judgment

Although not favored by this court, district courts are permitted to grant summary judgment

sua sponte.  *See Wimbush v. Wyeth*, 619 F.3d 632, 647 (6th Cir. 2010) (White, J., concurring in part

and dissenting in part).  We have made clear "that a district court may enter summary judgment sua

sponte in certain limited circumstances, so long as the losing party was on notice that [it] had to

---

[3]Delphi does not challenge the dismissal of any of the non-contract claims against United Plastics, nor does United Plastics cross-appeal the judgment in favor of Delphi on the breach of contract and action on account claims.  Accordingly, for the sake of simplicity, any subsequent reference to "defendants" will include only non-United Plastics defendants.

come forward with all of [its] evidence." *Shelby Cnty. Health Care Corp.*, 203 F.3d at 931 (internal quotation marks omitted) (alterations in original); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (explaining that "district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence"). Accordingly, "the losing party must 'be afforded notice and reasonable opportunity to respond to all the issues to be considered by the court.'" *Shelby Cnty. Health Care Corp.*, 203 F.3d at 931 (quoting *Emp'rs Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 105 (6th Cir.1995)); *see also* Fed. R. Civ. P. 56(f) ("After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant . . . ."). However, even if the court did not provide proper notice, "[t]he party against whom *sua sponte* summary judgment has improperly been entered must [also] . . . demonstrate prejudice in order to obtain relief on appeal." *Yashon v. Gregory*, 737 F.2d 547, 552 (6th Cir. 1984); *see also Excel Energy, Inc. v. Cannelton Sales Co.*, 246 F. App'x 953, 960 (6th Cir. 2007) ("However, even in circumstances where the procedure implemented by the district court did not provide adequate notice to the party against whom summary judgment was granted, this Court has upheld the judgment of the district court where the losing party could not demonstrate prejudice; that is, where remanding the case to the district court would merely entail an empty formality with no appreciable possibility of altering the judgment.").

In reviewing sua sponte grants of summary judgment, we look to "the totality of the proceedings below" to determine whether the losing party had sufficient notice that summary judgment could be granted against it. *Wimbush*, 619 F.3d at 647 (White, J., concurring in part and

dissenting in part). Specifically, this court has looked to whether the losing party made its own motion for summary judgment, because in such cases, "the failure of the court to provide notice may not be as detrimental since the moving party is at least aware that the issue has been raised." *Emp'rs Ins. of Wausau*, 69 F.3d at 105. Similarly, this court has examined whether the grounds upon which the district court granted summary judgment were specifically raised by the moving party, or were at least addressed by the party implicitly in the facts and arguments presented in the motion. *See Transition Healthcare Assocs., Inc. v. Tri-State Health Investors, LLC*, 306 F. App'x 273, 279 (6th Cir. 2009) ("It is true that neither Tri-State nor Transition mentioned the phrase 'piercing the corporate veil' in their briefing, and neither party described the requirements in Ohio for doing so. Nevertheless, Tri-State's motion for summary judgment and accompanying brief expounded upon the affirmative defenses it raised in its Answer.")

Delphi first asserts error in the district court's dismissal of its claims against Cronin and American, arguing that it "was nothing short of a complete surprise" because when those defendants failed to respond to the motion for summary judgment, "Delphi believed Summary Judgment would be granted in its favor." This assumption, however, is flatly contradicted by the rules governing motions for summary judgment and the case law of this circuit. As this court has explained:

> [U]nder Rule 56(c), a party moving for summary judgment always bears the burden of demonstrating the absence of a genuine issue as to a material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Although subsequent Supreme Court cases have redefined the movant's initial burden, *see, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the requirement that the movant bears the initial burden has remained unaltered. *See Celotex,* 477 U.S. at

> 325, 106 S.Ct. at 2553; *Street v. J.C. Bradford,* 886 F.2d 1472, 1479 (6th Cir. 1989).
> More importantly for all purposes, the movant must always bear this initial burden
> regardless if an adverse party fails to respond. *Adickes,* 398 U.S. at 161, 90 S.Ct. at
> 1610; *Kendall v. Hoover Co.,* 751 F.2d 171, 173-174 (6th Cir. 1984); *Felix v. Young,*
> 536 F.2d 1126, 1135 (6th Cir. 1976). In other words, a district court cannot grant
> summary judgment in favor of a movant simply because the adverse party has not
> responded. The court is required, at a minimum, to examine the movant's motion for
> summary judgment to ensure that he has discharged that burden.

*Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991); *cf.* Advisory Committee Note on 1963

Amendment to Subdivision (e) of Fed R. Civ. P. 56 (explaining that the amendment was not

"designed to affect the ordinary standards applicable to the summary judgment motion," and that

"[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine

issue, summary judgment must be denied even if no opposing evidentiary matter is presented").

Thus, despite Delphi's contentions, it was not entitled to summary judgment simply because Cronin

and American failed to respond. *See Vt. Teddy Bear Co., Inc. v. 1-800 Beargram, Co.*, 373 F.3d 241,

244 (2d Cir. 2004) (explaining that, even where the nonmoving party fails to submit a response to

a motion for summary judgment and "no opposing evidentiary matter is presented," "the district

court may not grant the motion without first examining the moving party's submission to determine

if it has met its burden of demonstrating that no material issue of fact remains for trial," and where

it has not met that burden, summary judgment must be denied); *Quorum Health Res., LLC v.*

*Maverick Cnty. Hosp. Dist.*, 308 F.3d 451, 471 (5th Cir. 2002) ("If the moving party fails to meet

its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's

response.").

Moreover, Cronin and American's failure to respond does not, on its own, compel the conclusion that the district court abused its discretion in sua sponte granting summary judgment in their favor. Thus, to further support its claim, Delphi asserts that the district court "ignored relevant evidentiary material" when it concluded that Cronin and American were agents for United Plastics. However, this assertion is irrelevant for the purpose of determining whether the district court abused its discretion in entering judgment sua sponte, and instead goes to whether the court properly granted summary judgment on the merits of those claims.

Delphi also argues that the district court "failed to provide any notice that it contemplated dismissing Delphi's claims against Cronin and American," "especially considering they did not oppose Delphi's motion." Delphi concludes that, "[w]ithout notice, argument or evidentiary support from Cronin/American Recycling, Delphi's claims should not have been dismissed." While Delphi is correct that the district court did not expressly provide notice that it was considering granting summary judgment in favor of Cronin and American, Delphi was aware that the court was considering summary judgment on all of the claims it raised, because Delphi filed the motion that put those claims at issue before the court. And, although the practice is not encouraged, the case law in this circuit is well-established regarding the district court's discretion to enter judgment sua sponte. Delphi cannot now claim that it was unaware of or surprised by the court's ability to do so.

Moreover, Delphi had the opportunity to "come forward with all of its evidence" because, in seeking summary judgment, it was required to present facts necessary to demonstrate that there was "no genuine dispute as to any material fact and [that Delphi was] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Of note, Delphi does not allege in its brief that there were any

facts or specific evidentiary support that it had been unable to present as a result of the court's sua sponte judgment. *See Aubin Indus., Inc. v. Smith*, 321 F. App'x 422, 423 (6th Cir. 2008) (explaining that plaintiff "knew that the magistrate judge was considering summary judgment on the joint venture claim because [plaintiff] itself had moved for summary judgment on the claim," which gave plaintiff "an opportunity and an incentive to present all of its evidence and arguments concerning the joint venture claim, which it did in its supporting memorandum," as well as addressing the issue in its reply brief, thus there was no abuse of discretion in granting summary judgment for defendant sua sponte). The record also reflects that Delphi never sought reconsideration of the district court's order, although it could have done so if it believed there was newly discovered evidence that should have been considered by the district court. *See, e.g., Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund*, 249 F.3d 519, 523 (6th Cir. 2001); *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).

Additionally, Delphi does not argue and the record does not show that Delphi suffered any prejudice as a result of the district court's entry of judgment. As discussed more fully below, Delphi failed to demonstrate that it was entitled to summary judgment on the basis of the facts presented in its motion and attached exhibits. Instead, a review of the evidence relied on by Delphi shows that neither Cronin nor American could be liable to Delphi for the specific claims brought against them. Without a showing of prejudice, even in the absence of notice, there is no abuse of discretion in sua sponte granting judgment in favor of Cronin and American. *See Meyer v. AmerisourceBergen Drug Corp.*, 264 F. App'x 470, 479 (6th Cir. 2008) (affirming the district court's sua sponte entry of judgment where "AmerisourceBergen was not harmed or prejudiced by the district court's failure

to provide notice before it *sua sponte* entered judgment in favor of the Meyers," "[n]o genuine issue of material fact existed with respect to these claims, and the disposition of the case hinged on the interpretation of contract language," which had already been fully briefed by AmerisourceBergen in its motion for summary judgment and where AmerisourceBergen "pointed to no new argument that it was prevented from making by virtue of the district court's *sua sponte* entry of judgment"). Because "remanding the case to the district court would merely entail an empty formality with no appreciable possibility of altering the judgment," *Excel Energy, Inc.*, 246 F. App'x at 960, we find that the district court did not abuse its discretion when it entered judgment in favor of Cronin and American.

Delphi also argues that the district court abused its discretion when it sua sponte granted summary judgment in favor of defendants Hooshiarnejad, Geib, France, and Alright, because those defendants only filed an opposition to Delphi's motion for summary judgment and did not actually seek dismissal of Delphi's claims. Delphi further argues that it was "surprised" by the district court's grant of summary judgment because "there was no indication" that the district court contemplated this result. Delphi asserts that once the parties had set forth all the evidence and arguments, "the worst case scenario" would be that it would "create a genuine issues of material fact, defeating Delphi's Motion and allowing the case to proceed to a jury." However, such an assumption ignores both the district court's power to grant summary judgment sua sponte as well as Delphi's own obligation to discharge its initial burden when seeking judgment in its favor.

Moreover, Delphi again fails to show any prejudice resulting from entry of the judgment, as the evidence did not demonstrate even a genuine issue of material fact, let alone that Delphi was

entitled to judgment on these claims. Delphi also does not argue that any evidence necessary for the court to enter judgment was absent from the record or that the issues were not fully addressed in the motion, response, and reply.[4] In fact, Delphi submitted almost three hundred pages of deposition testimony and other documentation when it filed its motion for summary judgment, and the parties engaged in significant discovery prior to filing the motion. *See Excel Energy, Inc.*, 246 F. App'x at 961 (explaining that, in regard to claims for which the court determined that sua sponte entry of judgment was proper, "[t]he parties also presented a voluminous record to the district court," including "several hundred pages of documents, affidavits, and deposition testimony," "the parties had taken extensive discovery prior to filing their motions," and "Plaintiff point[ed] to no evidence that would have been necessary for the district court to reach an accurate determination on the merits, but which was not submitted to the district court"). Unlike in cases where this court has reversed sua sponte entry of judgment, it cannot be said that "the proceedings deprived [Delphi] of any meaningful opportunity to offer argument to the district court as to why Defendants were liable on [its] claim[s]." *Id.* at 962. Accordingly, we find that the district court did not abuse its discretion in granting summary judgment sua sponte in favor of Hooshiarnejad, Geib, France, and Alright.

---

[4]Delphi also argues in its reply brief to this court that the opposition to the motion for summary judgment "primarily focused on arguments dealing with UCC preemption and the economic loss rule–none of which were relied upon by the District Court." Although this is true, the opposition also fully addressed all of Delphi's claims on the merits, and it was on this basis that the court entered judgment in favor of defendants. Additionally, Delphi was able to and did file a reply, meaning it had the opportunity to address all of the contentions raised in defendants' opposition. Thus, it cannot be said that the grounds on which the court disposed of Delphi's claims were not thoroughly addressed by the parties.

**B. Dismissal on the Merits**

Delphi also argues that the district court erred when it dismissed Delphi's non-contract claims on the merits and sua sponte granted summary judgment in favor of defendants.[5] This court "review[s] a district court's grant of summary judgment de novo and draw[s] all reasonable inferences in favor of the nonmoving party." *Branham v. Gannett Satellite Info. Network, Inc.*, 619 F.3d 563, 568 (6th Cir. 2010). Summary judgment is appropriate where the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010) ("The party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact.") (citing *Celotex Corp.*, 477 U.S. at 323). "A genuine issue of material fact exists when, 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475–76 6th Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

**1. Unjust Enrichment**

Delphi argues that the district court erred when it dismissed its claim for unjust enrichment against Hooshiarnejad, Geib, France, Alright, Cronin, and American.[6] First, Delphi claims that the

---

[5]Although Delphi originally included a claim for conversion in its third amended complaint and its motion for summary judgment, it does not challenge the dismissal of that claim on appeal, therefore, any such argument is waived. *See Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010).

[6]We note that both parties have filed notifications of suggestion of death of Cronin, indicating that Cronin passed away on or about February 21, 2011. Nonetheless, it appears that under Ohio law, Delphi's claims would not abate by Cronin's death. *See* Ohio Rev. Code §§ 2305.21, 2311.21.

district court improperly found that defendants were acting as agents of United Plastics. Although Delphi does not dispute on appeal that Hooshiarnejad, Geib, France, and Alright were acting as agents of United Plastics (and in fact, it specifically identified these four defendants as "agents" of United Plastics in its motion for summary judgment), it argues that "an analysis should have been made, based upon the evidence presented by Delphi, as to whether these Defendants acted beyond the scope of their authority, thereby rendering them personally liable." Delphi never made this argument in its motion for summary judgment and, even if it had, there is nothing in the record to suggest that any of these defendants did act outside their authority.

Moreover, Delphi's arguments seem to confuse the principles of agency law. As the principal corporation, United Plastics can only act through its agents, and Delphi concedes these defendants are agents of United Plastics. *See James G. Smith & Assocs., Inc. v. Everett*, 439 N.E.2d 932, 935 (Ohio Ct. App. 1981). Delphi's relationship with United Plastics, and correspondingly with these defendants as United Plastics' agents, was contractual, pursuant to the purchase orders submitted by United Plastics for the purchase of the material. Thus, a proper claim against these defendants would sound in contract. *See In re Estate of Popov*, No. 02CA26, 2003 WL 22017299, at *4 (Ohio Ct. App. May 21, 2003) (explaining that "a claim pursuant to quasi-contract is incompatible with claims pursuant to an express contract, and the existence of an express contract between the parties bars recovery under the doctrine of unjust enrichment"). Yet, instead of asserting its breach of contract claim against these defendants and alleging that, as agents of United Plastics

---

Thus, we address the merits of Delphi's sole claim against Cronin.

they were liable because they had acted outside the scope of their authority, Delphi asserted an improper quasi-contract unjust enrichment claim against these defendants. *See James G. Smith & Assocs., Inc.*, 439 N.E.2d at 935; *Riverstone Co. v. Kraft Homes L.L.C.*, 931 N.E.2d 1179, 1182 (Ohio Mun. Ct. 2010).

Although Delphi did not make the same concession regarding agency status as to Cronin and American, and the facts presented in the motion are insufficient to support a finding that American was acting as United Plastics' agent and ambiguous as to whether Cronin was acting as United Plastics' agent, Delphi's claims still fail as a matter of law against all defendants. "In order to prove unjust enrichment, a plaintiff must establish a benefit conferred by the plaintiff upon a defendant, the defendant's knowledge of the benefit, and the defendant's retention of the benefit under circumstances where it would be unjust to do so without payment." *Cantwell Mach. Co. v. Chicago Mach. Co.*, 920 N.E.2d 994, 996 (Ohio Ct. App. 2009) (citing *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298 (Ohio 1984)). Delphi argues that defendants had the benefit of Delphi's material, for which they never paid any money to Delphi. Yet, the facts show that, regardless of who ultimately obtained possession of the material, whether they knew the material originally belonged to Delphi, or whether any defendants ever paid Delphi, no benefit was conveyed on any of these defendants *by* Delphi. Delphi's own motion for summary judgment asserts only that defendants "received the benefit of approximately 986,662 pounds of Material," but does not state that Delphi itself conveyed that benefit on these defendants. Instead, as the record makes clear, Delphi conveyed a benefit on United Plastics when it sold the material to United Plastics (against whom Delphi already has a

judgment in the full amount it is owed under the parties' purchase order contracts) and United

Plastics (and its agents) took possession. If any benefit was conferred on these defendants, it was

conferred by United Plastics, not Delphi. Specifically as to Cronin and his company, American,

Delphi does not allege that Cronin made promises to Delphi, nor does Delphi refute that Cronin

stored the material and identified a buyer on United Plastics' behalf. Cronin did refuse Delphi access

to the remaining material after the September 2007 meeting, but Delphi did not hold title to the

material at that point, and no representation by Cronin either caused Delphi to allow the material to

be transferred to Cronin or dissuaded Delphi from demanding return of the material at that

September 2007 meeting. Thus, no defendants unjustly obtained a benefit for which they were

required to compensate Delphi, and the district court did not err when it entered judgment in favor

of defendants on this claim.

### 2. Promissory Estoppel, Promissory Fraud, Fraudulent Inducement, and Negligent Misrepresentation

Next, Delphi argues that the district court erred in dismissing its claims for promissory

estoppel, promissory fraud, fraudulent inducement, and negligent misrepresentation against

defendants Geib, Hooshiarnejad, and Alright.[7] The district court dismissed these claims on the

merits, finding that Delphi had not established that these defendants had a duty to promise payment

to Delphi "or to make any representations to Delphi with respect to payment on [United Plastics']

contract." *Delphi Auto. Sys.*, at 11–12. On appeal, Delphi argues that "[t]he evidence before the

---

[7]Delphi did not assert these claims against defendants France, Cronin, or American in its complaint or motion for summary judgment.

District Court proved that Defendants made misrepresentations about their ability to make payments to Delphi and their unfulfilled promises to pay."

To the extent that promissory estoppel is a quasi-contractual doctrine, such a claim would not be proper as to Hooshiarnejad, Geib, and Alright, admitted agents of United Plastics, as discussed above. Moreover, this claim also fails on the merits. To succeed on a promissory estoppel claim, Delphi must show that defendants made a promise, that they should have reasonably expected that promise to induce action or forbearance on the part of Delphi, and that the promise did induce such action or forbearance. *See McCroskey v. State*, 456 N.E.2d 1204, 1205 (Ohio 1983). Delphi also must show that the promise was "clear and unambiguous," that its reliance on that promise was "reasonable and foreseeable," and that it was "injured by the reliance." *Doe v. Adkins*, 674 N.E.2d 731, 737 (Ohio Ct. App. 1996).

In its motion for summary judgment, Delphi argued that Hooshiarnejad, Geib, and Alright "made promises, in writing and verbally, to pay the account with Delphi," the terms of which were "set forth in various e-mails, which not only promised for wire-transfer payments on certain days, but also set forth certain schedules as to when payments would be received by Delphi." Delphi asserted that it relied on these promises and "expected to be paid by Defendants for the material they received." Yet, all documents cited by Delphi to support this assertion were e-mails and correspondence sent *after* Delphi accepted United Plastics' purchase order and United Plastics took possession of the material. Thus, even assuming defendants made clear and unambiguous promises to pay, there is no injury that resulted *from these promises*, as Delphi had already transferred

possession of the material to United Plastics, and already suffered the injury of not receiving full payment for the material from United Plastics. In other words, regardless of whether these defendants promised they would pay the remaining balance owed by United Plastics, Delphi does not allege and the record does not demonstrate that Delphi was induced to act, or not to act, to its detriment as a result of these promises, or that these defendants had any duty to Delphi.

Similarly, to state a claim for promissory fraud, Delphi was required to prove by "competent, credible evidence" that defendants "made a promise without the present intention of performing." *Deitrick v. Am. Mortg. Solutions, Inc.*, No. 05AP-154, 2007 WL 611589, at *3 (Ohio Ct. App. March 1, 2007). Yet, Delphi presents no evidence to demonstrate that, in making promises to pay Delphi, defendants did not have a present intention to perform. Instead, Delphi's motion and attached exhibits show only that defendants told Delphi that they would make payments, and in fact established a payment schedule, but never actually made those payments. Delphi does assert that Geib wrote to Delphi and indicated that United Plastics had an agreement with an independent party to purchase the material, so that United Plastics could then remit payment to Delphi, but did so relying only on representations by France and had no further information regarding the alleged agreement. Yet, there is no assertion that Geib had reason to disbelieve France's representations, such that Geib knew at the time he promised payment to Delphi that he had no intention to actually remit payment. There is also no assertion that France's representations regarding the existence of a purchaser were untruthful, or that France actually misrepresented anything with regard to existence

of the purchaser. At most, the facts show only that France did not convey identifying information about the purchaser to Geib, therefore Geib could not and did not convey such information to Delphi.

Claims for fraudulent inducement also overlap significantly with the other claims raised by Delphi, and require proof of similar or identical elements. "The prima faci[e] elements of a claim for fraudulent inducement are (1) a representation, (2) material to the transaction, (3) which is made falsely, with knowledge of it[s] falsity or with utter disregard and recklessness as [to] its falsity, (4) intent to mislead, (5) justifiable reliance on the representation, and (6) a resulting injury." *Countrymark Coop., Inc. v. Smith*, 705 N.E.2d 738, 746 (Ohio Ct. App. 1997). As noted above, Delphi has failed to demonstrate that defendants made false representations with knowledge of that falsity, or that Delphi relied on such representations to its detriment. Similarly, to prove its claim of negligent misrepresentation, Delphi was required to demonstrate that defendants, "in the course of [their] business, profession or employment, or in any other transaction in which [they had] a pecuniary interest, supplie[d] false information for the guidance of others in their business transactions," did so without exercising "reasonable care or competence in obtaining or communicating the information," that Delphi justifiably relied on that information, and that "pecuniary loss" resulted from that reliance. *Delman v. City of Cleveland Heights*, 534 N.E.2d 835, 838 (Ohio 1989). Having failed to demonstrate that any of defendants' representations resulted in pecuniary loss, and in fact being unable to so demonstrate because Delphi had already suffered the pecuniary loss that prompted the filing of the underlying complaint before any defendants made these representations, Delphi has failed to show that defendants engaged in negligent misrepresentation.

**3. Civil Conspiracy**

Finally, Delphi challenges the district court's dismissal of its civil conspiracy claim. However, as the district court correctly explained, "[a]n action for civil conspiracy cannot be maintained unless an underlying unlawful act is committed." *Wilson v. Harvey*, 842 N.E.2d 83, 92 (Ohio Ct. App. 2005). Here, there is no underlying unlawful act, therefore, there can be no civil conspiracy.

## IV.  CONCLUSION

Accordingly, for the reasons set forth above, we AFFIRM the district court's order granting summary judgment sua sponte in favor of defendants.